UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PHILADELPHIA INQUIRER, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : CIVIL ACTION NO. |
| CUSTOM PRINTS AND FRAMES, LLC D/B/A TITLE GAME FRAMES; TIMOTHY RACHUBA; and DANIEL SIMON HADDAD, | : |
| Defendants. | : |

## VERIFIED COMPLAINT

Plaintiff The Philadelphia Inquirer, LLC (hereinafter "The Inquirer" or "Plaintiff") by and through its undersigned attorneys files its Complaint against Defendants as follows:

1. This is an action for trademark infringement and unfair competition under the Lanham Act and the common law of Pennsylvania, and copyright infringement.

2. Plaintiff, The Inquirer is a limited liability company organized and existing under the laws of the State of Delaware having a place of business at 100 S. Independence Mall West, Suite 600, Philadelphia, PA 19106.

3. Upon information and belief, Defendant, Custom Prints and Frames, LLC d/b/a Title Game Frames, is a Wyoming limited liability company having its principal place of business at 200 N. Gould Street, Sheridan, WY 82801, and is doing business within this district. Upon information and belief, Defendant Custom Prints and Frames, LLC d/b/a Title Game Frames also maintains a physical business address at 30 N Gould Street, Suite 21688, Sheridan, WY 82801.

1

4. Upon information and belief, Defendant, Timothy Rachuba, is an individual residing in the Commonwealth of Pennsylvania. Defendant Rachuba, upon information and belief, is also an owner and/or principal of Defendant Custom Prints and Frames, LLC d/b/a Title Game Frames, and at all relevant times acted in concert with Defendant Custom Prints and Frames, LLC d/b/a Title Game Frames and directed the activities of Defendant Custom Prints and Frames, LLC d/b/a Title Game Frames complained of herein.

5. Upon information and belief, Defendant, Daniel Simon Haddad is an individual residing in the Commonwealth of Pennsylvania. Defendant Haddad, upon information and belief, is also an owner and/or principal of Defendant Custom Prints and Frames, LLC d/b/a Title Game Frames, and at all relevant times acted in concert with Custom Prints and Frames, LLC d/b/a Title Game Frames and directed the activities of Defendant Custom Prints and Frames, LLC d/b/a Title Game Frames complained of herein. Defendants Custom Prints and Frames, LLC d/b/a Title Game Frames, Mr. Rachuba and Mr. Haddad are collectively referred to as "Defendants" herein.

6. This action arises under the trademark laws of the United States, and in particular the Lanham Act, 15 U.S.C. §§1051 *et. seq.*, and the U.S. Copyright Act, 17 U.S.C. §§101 *et. seq*. It also arises under principles of state common law. Federal question jurisdiction is conferred pursuant to 28 U.S.C. 1331, 1332, and 1338.

7. This Court has pendent jurisdiction over the claims brought under the state common law pursuant to 28 U.S.C. 1338(b).

8. Venue in this court is based upon 28 U.S.C. 1391.

9. Upon information and belief, the acts of Defendants have been and continue to be committed by them in interstate commerce.

10. Upon information and belief, Defendants have done business in and have carried on a continuous and systematic part of their general business within the Commonwealth of Pennsylvania and are subject to the personal jurisdiction of this Court under the Pennsylvania long-arm statute, 42 Pa.C.S.A. 5301 and 5302.

## **FACTS**

**A.     The Inquirer and Its Intellectual Property**

11. The Inquirer, which was founded in 1829, is one of the oldest continuously published daily newspapers in the United States.

12. The Inquirer has a long history of independent journalism focused on Philadelphia and the Delaware Valley and is a newspaper of general circulation. Its journalism is published in print and electronic editions, and on its web site www.inquirer.com.

13. The Inquirer has been awarded twenty Pulitzer Prizes and numerous other awards and is well-known for its excellence in journalism.

14. In connection with its brand, The Inquirer is the owner of the federally registered trademark THE PHILADELPHIA INQUIRER (U.S. Reg. Nos. 270,787 and 4,049,619), among other variants and formative marks, several of which have achieved "incontestable status" with the United States Patent and Trademark Office (collectively, "THE PHILADELPHIA INQUIRER Trademarks"). True and correct copies of the registration certificates for U.S. Reg. Nos. 270,787 and 4,049,619 are attached hereto as **Exhibit A.**

15. The above-identified registrations are valid, subsisting, uncancelled and unrevoked.

16. The Inquirer has been using THE PHILADELPHIA INQUIRER Trademarks in connection with newspapers, printing, and journalism consistently for over one hundred years.

17. In addition to its newspapers, The Inquirer's store (accessible at https://store.inquirer.com/collections/reprints) sells, among other things, framed copies of authorized reprints of historic and notable front-page stories. A true and correct screen shot of the url https://store.inquirer.com/collections/reprints, dated February 14, 2025, is attached hereto as **Exhibit B.**

18. THE PHILADELPHIA INQUIRER Trademarks enjoy substantial goodwill as a result of The Inquirer's journalism and ongoing and continuous investment in its brand, and it consistently protects its THE PHILADELPHIA INQUIRER Trademarks from unauthorized use.

19. The Inquirer has a large and loyal following of subscribers and readers due to its established reputation for its journalism and reporting.

20. The Inquirer's marketing and branding investments has contributed to its wide audience and loyal readership, which includes print and digital subscribers, as well as purchasers of single copies. Those investments have contributed to its brand and associated goodwill, which is captured by its THE PHILADELPHIA INQUIRER Trademarks.

21. Plaintiff has expended significant amounts of money advertising and promoting its business and services under its federally registered trademarks.

22. As a result of Plaintiff's extensive sales, advertising and promotion of THE PHILADELPHIA INQUIRER Trademarks, Plaintiff's trademarks have achieved national recognition, and are well-known throughout this district.

23. As a result of Plaintiff's sales, advertising and promotion of THE PHILADELPHIA INQUIRER Trademarks, Plaintiff's trademarks have come to signify Plaintiff and Plaintiff's goods since long prior to the acts of Defendants complained of herein, and Plaintiff now owns the

valuable goodwill symbolized by and embodied in THE PHILADELPHIA INQUIRER Trademarks.

24. In addition, the Inquirer owns all rights in the copyrights in all issues of The Philadelphia Inquirer newspaper, and it has registered those copyrights with the United States Copyright Office on an ongoing and continuous basis for decades.

25. The Inquirer licenses its copyrighted works to certain third parties and is compensated for the grant of those rights.

26. Notably, The Inquirer has submitted copyright claim #1-14763175247 to register with the United States Copyright Office the complete February 10, 2025, issue of The Philadelphia Inquirer newspaper, which prominently features on its front page coverage of the Philadelphia Eagles as the champions of Super Bowl LIX.

27. The Inquirer also obtained U.S. Copyright Reg. No. TX0009304133 for the complete January 30, 2023, issue of The Philadelphia Inquirer newspaper, which features on its cover coverage of the Philadelphia Eagles as NFC Championship winners.

28. The Inquirer obtained U.S. Copyright Reg. No. TX0008634875 for the complete February 5, 2018, issue of The Philadelphia Inquirer newspaper, which features on its cover coverage of the Philadelphia Eagles football team as the champions of Super Bowl LII.

29. The Philadelphia Inquirer newspaper issues that are the subject of the foregoing copyright claim #1-14763175247 and Copyright Registration Nos. TX0008634875 and TX0009304133 are referred to herein as The Inquirer's "Copyrighted Works."

B. Defendant's Infringement of The Inquirer's Intellectual Property

30. On or about January 31, 2025, The Inquirer first learned that Defendants, via Custom Prints and Frames, LLC d/b/a Title Game Frames—a company which makes and sells

online (via its website www.titlegameframes.com and ETSY shop at the following URL: https://www.etsy.com/shop/TitleGameFrames)—were offering for sale modified unauthorized copies of front pages of The Philadelphia Inquirer newspaper, framed for use as wall hangings. As of February 13, 2025, Defendant continues to offer unauthorized, modified copies of front pages of The Philadelphia Inquirer newspapers for sale, in framed and unframed versions. Defendants are direct competitors of The Inquirer, and they sell directly competing goods including framed copies of newspaper front pages.

31.     Specifically, Defendants are advertising, offering for sale, and selling without authorization a modified unauthorized copy of the February 10, 2025, issue of The Philadelphia Inquirer newspaper, which includes a truncated, edited version of only the front page of the issue set in a frame, at the following url: https://www.titlegameframes.com/collections/philadelphia-eagles-nfl/products/2025-philadelphia-eagles-super-bowl-lix-champions-big-easy-saquon-edition-newspaper and https://www.etsy.com/listing/1857968576/2025-philadelphia-eagles-super-bowl?click_key=19c99d9ed2ca5eaffedc25ca1cb7b7c36e095777%3A1857968576&click_sum=ae7c1c73&ga_search_query=eagles&ref=shop_items_search_1&pro=1&frs=1&sts=1.

32.     Defendants are also advertising, offering for sale, and selling without authorization a modified unauthorized copy of the January 30, 2023 issue of The Philadelphia Inquirer newspaper, which includes a truncated version of only the front page of the issue set in a frame, at the following url: https://www.titlegameframes.com/products/2023-philadelphia-eagles-nfc-championship-super-Frames-front-page-newspaper.

33. Defendants are also advertising, offering for sale, and selling without authorization a modified copy of the February 5, 2018 issue of The Philadelphia Inquirer newspaper, which includes a truncated version of only the front page of the issue, set in a frame, at the following urls: https://www.titlegameFrames.com/products/2018-philadelphia-eagles-super-bowl-lii-champions-inquirer-Framesd-print-lincoln-financial-field, and https://www.etsy.com/listing/1267727071/2018-philadelphia-eagles-super-bowl-lii?click_key=c7dd7bbb82800c16b6e15993e1357161a540c08f%3A1267727071&click_sum=a635ab43&ga_search_query=eagles&ref=shop_items_search_3&pro=1&frs=1&sts=1.

34. On information and belief, Defendants are also offering modified unauthorized copies of The Philadelphia Inquirer newspaper front pages in multiple sizes on eBay at: https://www.eBay.com/str/titlegameframes.

35. Defendants' foregoing modified, framed versions of The Inquirer newspaper front pages are referred to herein as the "Infringing Inquirer Front Pages." True and correct screenshots of the Infringing Inquirer Front Pages on Defendant's website, ETSY shop, and eBay are attached hereto at **Exhibit C.**

36. Defendants' unauthorized copying and/or modification of The Inquirer's Copyrighted Works, as well as its commercial use of THE PHILADELPHIA INQUIRER Trademarks (which are featured prominently on each issue of The Philadelphia Inquirer—including but not limited to the first page), constitutes copyright infringement, trademark infringement, and unfair competition.

37. The Inquirer therefore immediately sent Defendants a cease and desist letter, dated February 3, 2025, demanding that they remove from the Title Game Frames website and destroy all Infringing Inquirer Front Pages and images thereof, and cease and desist from engaging in

infringement going forward. A true and correct copy of the February 3, 2025 cease and desist letter is attached hereto as **Exhibit D.**

38. Plaintiff's February 3, 2025 letter went unanswered, and Defendants continued to offer unauthorized and modified reprints of The Philadelphia Inquirer newspaper front pages on their website, Etsy, and eBay.

39. Therefore, on February 10, 2025, The Inquirer sent another cease and desist letter to Defendants, again demanding that they remove from the Title Game Frames website and destroy all Infringing Inquirer Front Pages and images thereof, and cease and desist from engaging in infringement going forward. A true and correct copy of the February 10, 2025 cease and desist letter is attached hereto as **Exhibit E**. This letter too went unanswered.

40. As of February 10, 2025, Defendants continued to offer unauthorized and modified reprints of Inquirer front pages on their web site, Etsy, eBay, and Instagram.

41. Accordingly, on February 11, 2025, The Inquirer, this time via outside counsel, sent Defendants a final cease and desist letter, demanding once again that they remove from the Title Game Frames website and destroy all Infringing Inquirer Front Pages and images thereof, and cease and desist from engaging in infringement going forward. A true and correct copy of the February 11, 2025 cease and desist letter is attached hereto as **Exhibit F.**

42. Once again, Defendants ignored the letter and continued to advertise, offer for sale, and sell Infringing Inquirer Front Pages — which are featured throughout the Title Game Frames website and on its ETSY store and eBay.

43. As of February 13, 2025, Defendants continue to offer unauthorized and modified reprints of Infringing Inquirer Front Pages on their web site, Etsy, eBay, and Instagram.

44. Defendants' intentional, infringing conduct has caused and, if not immediately and, ultimately, permanently enjoined by this Court, will continue to cause The Inquirer significant, irreparable harm to its brand and confusion to its customer base.

45. This concern is all the more pressing given the Eagles Super Bowl Parade taking place today, February 14, 2025, and the heightened interest it will bring to The Philadelphia Inquirer's coverage of the Eagles' championship season, the championship game, and celebrations thereafter.

46. In sum, Defendants seek to trade off The Inquirer's trademarks and copyrighted front pages by: (1) modifying and copying them; (2) offering unauthorized modified copies and derivative versions for sale as wall hangings, framed or unframed, in various sizes; (3) using images of those unauthorized modified copies for promotional purposes, without the permission of Plaintiff and for Defendants' sole benefit.

47. Accordingly, a temporary restraining order and preliminary injunction—followed by a permanent injunction—is warranted and indeed necessary, alongside monetary damages.

## COUNT I
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### UNDER 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)

48. The Inquirer incorporates by reference each of the allegations contained in foregoing Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Plaintiff's federally registered THE PHILADELPHIA INQUIRER Trademarks are valid, subsisting, uncancelled, and unrevoked. In particular, Plaintiff's federally registered trademark Registration Nos. 270,787 and 4,049,619 are incontestable.

9

50. Plaintiff has continuously used its THE PHILADELPHIA INQUIRER Trademarks on its newspapers and associated with its news reporting business, products, and services in interstate commerce since the dates indicated on the face of the registrations.

51. Plaintiff's continuous use and promotion of THE PHILADELPHIA INQUIRER Trademarks in interstate commerce has been long prior to the acts of Defendants complained of herein.

52. Defendants have used the mark "The Philadelphia Inquirer" without Plaintiff's permission.

53. Defendants' use of "The Philadelphia Inquirer" without Plaintiff's permission constitutes an infringement of Plaintiff's federally registered THE PHILADELPHIA INQUIRER Trademarks and unfair competition.

54. Defendants' advertising, promoting and selling of Infringing Inquirer Front Pages bearing Plaintiff's federally registered THE PHILADELPHIA INQUIRER Trademarks is certain to cause confusion in the marketplace.

55. Upon information and belief, the acts of Defendants were and are intended and are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the goods marketed by Defendants under THE PHILADELPHIA INQUIRER Trademarks, in that customers or others are likely to mistakenly believe that the goods of Defendants are sold by or under the sponsorship of or in affiliation with Plaintiff. Again, Plaintiff also sells framed and unframed versions of its The Philadelphia Inquirer newspaper front pages.

56. Defendants' products bearing Plaintiff's federally registered THE PHILADELPHIA INQUIRER Trademarks are marketed and sold through the Internet to identical

end purchasers as the framed and unframed front pages of The Philadelphia Inquirer newspaper sold by Plaintiff under its federally registered THE PHILADELPHIA INQUIRER Trademarks.

57. Plaintiff has no control over the Infringing Inquirer Front Pages promoted, advertised, and/or sold by Defendants, with the result that Plaintiff's valuable goodwill with respect to its valuable THE PHILADELPHIA INQUIRER brand is irreparably damaged by the acts of Defendants complained of herein.

58. On information and belief, Defendants will continue to infringe the rights secured to Plaintiff by Plaintiff's federal registrations for THE PHILADELPHIA INQUIRER Trademarks unless restrained by this Court.

59. As a result of said trademark infringement by Defendants, Plaintiff has suffered and continues to suffer irreparable injury, for which it has no adequate remedy at law. Plaintiff has also suffered significant monetary damages.

## COUNT II
## COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT

60. The Inquirer incorporates by reference each of the allegations contained in foregoing Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

61. Plaintiff's THE PHILADELPHIA INQUIRER Trademarks are valid, subsisting, uncancelled, and unrevoked.

62. Plaintiff has continuously used its THE PHILADELPHIA INQUIRER Trademarks on its newspapers and associated with its news reporting business, products, and services in interstate commerce since the dates indicated on the face of the registrations.

63. Plaintiff's continuous use and promotion of THE PHILADELPHIA INQUIRER Trademarks in interstate commerce has been long prior to the acts of Defendants complained of herein.

64. Defendants have used the mark "The Philadelphia Inquirer" without Plaintiff's permission.

65. Defendants' use of "The Philadelphia Inquirer" without Plaintiff's permission constitutes an infringement of Plaintiff's THE PHILADELPHIA INQUIRER Trademarks and unfair competition.

66. Defendants' advertising, promoting and selling of Infringing Inquirer Front Pages bearing Plaintiff's THE PHILADELPHIA INQUIRER Trademarks is certain to cause confusion in the marketplace.

67. Upon information and belief, the acts of Defendants were and are intended and are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the goods marketed by Defendants under THE PHILADELPHIA INQUIRER Trademarks, in that customers or others are likely to mistakenly believe that the goods of Defendants are sold by or under the sponsorship of or in affiliation with Plaintiff. Again, Plaintiff also sells framed versions of its noteworthy newspaper front pages.

68. Defendants' products bearing Plaintiff's THE PHILADELPHIA INQUIRER Trademarks are sold through the same channels of trade to the identical end purchasers as the framed and unframed front pages of The Philadelphia Inquirer newspaper sold by Plaintiff under its federally registered THE PHILADELPHIA INQUIRER Trademarks.

69. Plaintiff has no control over the Infringing Inquirer Front Pages promoted, advertised, and/or sold by Defendants, with the result that Plaintiff's valuable goodwill with respect to its valuable THE PHILADELPHIA INQUIRER brand is irreparably damaged by the acts of Defendants complained of herein.

70. On information and belief, Defendants will continue to infringe Plaintiff's rights in its THE PHILADELPHIA INQUIRER Trademarks unless restrained by this Court.

71. As a result of said trademark infringement and unfair competition by Defendants, Plaintiff has suffered and continues to suffer irreparable injury, for which it has no adequate remedy at law. Plaintiff has also suffered significant monetary damages.

## COUNT III
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101 *et seq.*

72. The Inquirer incorporates by reference each of the allegations contained in foregoing Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

73. The Inquirer is the owner of valid copyright registrations for its Copyrighted Works.

74. Defendants were aware of and had access to The Inquirer's Copyrighted Works prior to the date on which they began engaging in the manufacture, advertising, distribution, and/or sale of the Infringing Inquirer Front Pages.

75. Defendants' conduct—which involved copying and creating derivative versions of The Inquirer's Copyrighted Works—was deliberate, willful, malicious, oppressive, and without regard to The Inquirer's proprietary rights.

76. Defendants' conduct constitutes copyright infringement under 17 U.S.C. § 101, *et seq*.

77. Defendants' copyright infringement has caused and will continue to cause The Inquirer to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to its Copyrighted Works and has damaged its business reputation and goodwill, diverted its trade, and caused loss of profits, all in an amount not yet determined.

78. The Inquirer is entitled to receive actual damages and the profits made by Defendants from its wrongful acts pursuant to 17 U.S.C. § 504, as well as statutory damages.

79. The Inquirer is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

80. In addition, Defendants' copyright infringement, and the threat of continuing infringement, has caused and will continue to cause The Inquirer repeated and irreparable injury. It would be difficult to fully ascertain the amount of money damages that would afford The Inquirer adequate relief at law for Defendants' acts and continuing acts. Indeed, The Inquirer's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by Defendants.

81. Therefore, the Inquirer is entitled to injunctive relief and an order under 17 U.S.C. § 503 that the Infringing Inquirer Front Pages and all related products, materials and objects by which such infringing copies were produced be seized, impounded, and destroyed.

82. Again, as a result of said copyright infringement, Plaintiff has suffered and continues to suffer serious and substantial injury.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief against Defendants as follows:

A. For a temporary, preliminary, and permanent injunction restraining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

1. directly or indirectly infringing Plaintiff's "THE PHILADELPHIA INQUIRER" trademarks;

2. engaging in any acts or activities directly or indirectly calculated to trade upon the trademarks and/or reputation or goodwill of Plaintiff;

3. directly or indirectly using any false description or representation in connection with the sale of their products;

4. creating, advertising, promoting, offering for sale, and/or selling unauthorized reprints and/or derivative or otherwise modified versions of Plaintiff's Copyrighted Works;

5. creating, advertising, promoting, offering for sale, and/or selling unauthorized reprints and/or derivative or otherwise modified versions of The Philadelphia Inquirer newspaper, which bear Plaintiff's THE PHILADELPHIA INQUIRER Trademarks;

6. passing off, or inducing or enabling others to sell or pass off, as products produced by Plaintiff or for Plaintiff, any product of Plaintiff or produced under the control or supervision of Plaintiff and approved by Plaintiff as a product of the Defendants, or a product authorized or permitted to be sold by Defendants;

7. filling and/or taking any orders for the Infringing Inquirer Front Pages;

8. using in the sale, offering for sale, promotion, advertising, marketing and/or distribution of their goods, Plaintiff's "THE PHILADELPHIA INQUIRER" trademarks or any mark which simulates or imitates or is confusingly similar to Plaintiff's "THE PHILADELPHIA INQUIRER" trademarks in such a manner as to deceive, or to falsely describe or represent the source of the goods or otherwise create confusion among the purchasing public or the trade;

9. using Plaintiff's "THE PHILADELPHIA INQUIRER" trademarks in the selling, offering for sale, promoting, advertising, marketing and distributing of products, or any use or mention of the trademarks "THE PHILADELPHIA INQUIRER," or mention of or reference

to Plaintiff's products in such a manner as to falsely suggest a connection between Plaintiff and Defendant; and

        10.    competing unfairly with Plaintiff in any manner whatsoever.

B.    That Defendants be required to send a written notice acceptable to Plaintiff and to the court to each of the customers from whom they have received an order for the Infringing Inquirer Front Pages and all products which infringe Plaintiff's trademarks or copyrights, notifying each customer that the orders have been cancelled.

C.    That Defendants be required to send a written notice acceptable to Plaintiff and to the Court to each of the customers to whom Defendants have shipped the Infringing Inquirer Front Pages and all other products which infringe Plaintiff's trademarks or copyrights, notifying each customer that such goods are recalled and requesting each such customer to return such goods to Defendants at Defendants' expense.

D.    That Defendants take all necessary and appropriate steps to recall all the Infringing Inquirer Front Pages and all other products which infringe Plaintiff's trademarks or copyrights, including all other materials, including stationery, advertising and signs bearing photographs, drawings or mention THE PHILADELPHIA INQUIRER Trademarks.

E.    That Defendants be forbidden from filling pending orders for Infringing Inquirer Front Pages and all other products which infringe Plaintiff's trademarks or copyrights.

F.    That Defendants be required to account for and pay over to Plaintiff all of the profits obtained by Defendants from their unlawful acts as complained of herein.

G.    That Defendants be directed to account for and pay over to Plaintiff all damages suffered by Plaintiff as a result of Defendants' violation of the Lanham Act, Pennsylvania common

law and the Copyright Act, and that such damages be enhanced because of Defendants' willful actions.

      H.      That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of Defendants, so as to prevent fraud on the Court and to ensure the capacity of Defendants to pay, and the prompt payment of, any judgment entered against Defendants in this action.

      I.      That Plaintiff be awarded compensatory damages.

      J.      That Plaintiff be awarded statutory damages under the Copyright Act.

      K.      That Plaintiff be awarded punitive damages for the willful and wanton acts of unfair competition and other unlawful injurious acts of Defendants complained of herein.

      L.      That Plaintiff be awarded its reasonable attorneys' fees and the costs of this action.

      M.      That Plaintiff be awarded such other relief as the Court may deem just and proper.

Date: February 14, 2025          **ROYER COOPER COHEN BRAUNFELD LLC**

                                            By:   /s/ *Barry L. Cohen*
                                            Barry L. Cohen, Esquire (PA Bar No. 68864)
                                            Nancy Rubner Frandsen, Esquire (PA Bar 46497)
                                            Julie M. Latsko, Esquire (PA Bar No. 315782)
                                            Three Logan Square
                                            1717 Arch Street, 47th Floor
                                            Philadelphia, PA 19103
                                            Email: bcohen@rccblaw.com
                                            Email: nfrandsen@rccblaw.com
                                            Email: jlatsko@rccblaw.com
                                            Tel: 484-362-2628; Fax: 484-362-2630

                                            *Attorneys for Plaintiff, The Philadelphia Inquirer, LLC*

## **VERIFICATION**

I, Laurence Weilheimer, am the SVP & General Counsel of Plaintiff, The Philadelphia Inquirer LLC, and I am authorized to make this Verification on its behalf.

I have read the foregoing Verified Complaint, and I verify that, based on my knowledge, information and belief and the information provided to me, the averments contained therein are true and correct.

I make this Verification subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

THE PHILADELPHIA INQUIRER LLC

Date: February 14, 2025

By: _____

Print Name: *Laurence Weilheimer*

Print Title: *SVP & General Counsel*